**Fred A. PERRY, Appellant,**

v.

**ORO NEGRO OPERATIONS, INC., and Ralph Russell, Appellees.**

No. 12–81–0026–CV.

Court of Appeals of Texas, Tyler.

June 2, 1983.

A.D. Henderson, Jerry L. Calhoon, McDonald, Calhoon & Freeman, Palestine, for appellant.

Blake Bailey, Tyler, for appellee.

COLLEY, Judge.

This is an appeal from a judgment for money damages rendered in favor of appellee/plaintiff against appellant/defendant.

On August 22, 1977, appellant Fred A. Perry (hereafter Perry) and Oro Negro Operations, Inc. (hereafter Oro Negro) executed a letter contract granting Oro Negro

an exclusive option for ten days from the date of the letter to purchase from Perry certain oil, gas and mineral leases owned by Perry in eight different surveys located in Wood County, Texas. The considerations moving from Oro Negro to Perry is mentioned hereafter. The option contemplated that Oro Negro, in exercising the option as to any lease, would give written notice to Perry, whereupon Perry was required to furnish "evidence" of "good title as to each leasehold estate which was subject to Oro Negro's reasonable acceptance." Thereafter if title was accepted by Oro Negro, Perry agreed to assign and convey the said oil, gas and mineral leasehold estate to Oro Negro. Such assignments were to contain a "general warranty of title" clause. Each assignment so made was to reserve in favor of Perry a 1/32nd of 8/8ths overriding royalty interest under the terms of the oil, gas and mineral lease in and to all oil and gas or other minerals produced thereunder. The contract recited that such royalties reserved in favor of Perry were subject to "proportionate reduction [sic] . . . . " In addition, provision was made that after pay-out on each well, Perry would receive an additional 1/32nd of 8/8ths overriding royalty interest. The option also provided that upon the execution and delivery ". . . of said assignment . . . ," a $50 per acre bonus was to be paid by Oro Negro to Perry.

Paragraph (5) of the option agreement reads as follows:

"The closing of this transaction, in the event said exclusive option is exercised by Oro Negro, shall occur promptly upon reasonable approval of title by Oro Negro and tender of the assignment in recordable form to Oro Negro as provided in this letter agreement."

Under the option Oro Negro was to pay delay rentals (presumably during the primary term of each lease) thirty days in advance of the due date and furnish written evidence of such payment to Perry. Paragraph (7) of the agreement obligated Oro Negro to drill two wells within one year from the date of the agreement on certain properties.

Neither party to this appeal contended in the trial court, nor do they contend here, that the option agreement was ambiguous. On September 15, 1977 (fourteen days after the expiration of the original letter of agreement), the parties extended the term of the option from "ten days to sixty days from August 22, 1977." This September 15th agreement also added two addition surveys to the contract. The amendment also repeated several existing conditions of the option agreement and contains a paragraph (6) reading: "Undersigned acknowledges payment of $50,000 (fifty thousand dollars) as a payment in good faith by Oro Negro, on September 15, 1977." Another $50,000 was paid to Perry by check drawn by appellant Ralph H. Russell (hereafter Russell) against the account of Tres Changos Oil Company at the First National Bank of Longview. On November 8, 1978, Oro Negro (Russell) wrote and mailed the following letter to Perry:

November 8, 1978

Fred Perry
        Release of Interest,
        Wood County, Texas

Dear Fred,

I have today written a letter covering my intent to develop two leases in the H. Payne survey of Wood County, Texas, such leases being the S. Scott 114-acre tract and the south 58-acre part of the Four State leases. All other leases in Wood County, Texas, which may have come to me by assignment or by other agreement, from you, are hereby released by me to you as of this date. This does not signify that I am releasing any interests not yet acquired, nor any interest acquired through other parties, for such interests are specifically excluded from this release.

        Yours very truly,
        /s/ Ralph H. Russell"

The record demonstrates that Perry began procuring oil and gas leases covering lands located in Wood County, Texas, during the year 1977, expending for the purchase thereof approximately $118,000.00 (lease bonus); that Perry met with Russell

who was the principal shareholder and chief executive officer of Oro Negro at Russell's office in Longview, Texas, in August 1977 to discuss contracting with Oro Negro to assign the leases purchased by Perry to Oro Negro so that drilling operations on the lands could be undertaken by Oro Negro. On August 22, 1977, the parties entered into the written agreements discussed above and Perry delivered some originals of oil, gas and mineral leases held by him as lessee to Oro Negro. The evidence shows that from time to time Perry personally delivered or mailed to Oro Negro additional original oil, gas and mineral leases covering the lands described in the original letter of agreement (plaintiff's exhibit No. 1) and the September 15, 1977, amendment thereto (plaintiff's exhibit No. 2). No written assignments of the oil and gas leases presumably taken in the name of Perry as lessee were ever executed by Perry and delivered to Oro Negro. Perry testified that he never refused to execute any such assignments and Russell testified that Perry failed on several occasions to respond to Russell's request for written assignments of the various leasehold estates. Sometime in 1978 Perry requested a return of the oil and gas leases he had delivered to Oro Negro, but they were never returned to him. The evidence shows that Oro Negro actually began drilling operations on the "Susan Scott" 114-acre tract covered by plaintiff's exhibit No. 1, but such tract was apparently under a pre-existing oil and gas lease in favor of some other third party and when that fact was discovered, Oro Negro abandoned its drilling operations on such tract. The jury in response to the special issues submitted to it made the following answers, to-wit:

## ISSUE NO. 1

Do you find from a preponderance of the evidence that Defendant, Fred Perry, did not assign the leases to Plaintiff, Oro Negro Operations, Inc., covering mineral rights to the tracts of property subject to the August 1977 agreement?

Answer "We do" or "We do not."
ANSWER: We do.

## ISSUE NO. 2

Do you find from a preponderance of the evidence that Defendant, Fred Perry, did not assign the leases to Plaintiff, Oro Negro Operations, Inc., covering mineral rights to the tracts of property subject to the November 1978 agreement?

Answer "We do" or "We do not."
ANSWER: We do.

If you have answered Issue No. 1 or 2 "We do" and only in that event then answer Issue No. 3.

## ISSUE NO. 3

Do you find from a preponderance of the evidence that prior to giving Mr. Perry the checks marked P5 and P6 Ralph Russell knew he had the right not to make any payment until such assignment was made?

Answer: "We do" or "We do not."
ANSWER: We do.

If you have answered Issue No. 3 "We do" and only in that event then answer Issue No. 4.

## ISSUE NO. 4

Do you find from a preponderance of the evidence that he intended to make these payments notwithstanding this right?

Answer: "We do" or "We do not."
ANSWER: We do.

If you have answered Issue No. 1 or 2 "We do" and only in that event then answer Issue No. 5.

## ISSUE NO. 5

Do you find from a preponderance of the evidence that at the time Ralph Russell wrote the letter dated November 8, 1978, that he knew he had the right to assignments by Fred A. Perry?

Answer: "We do" or "We do not."
ANSWER: We do.

If you have answered Issue No. 5 "We do" and only in that event then answer Issue No. 6.

## ISSUE NO. 6

Do you find from a preponderance of the evidence that by the letter of November 8, 1978, Ralph Russell intended to give up any such right?

Answer "We do" or "We do not."

ANSWER: We do not.

## ISSUE NO. 7

What do you find from a preponderance of the evidence was the reasonable cost of drilling two wells in Wood County within one year of August 22, 1977?

Answer in dollars and cents only:

ANSWER: $320,000.00

The trial court, based on the stipulations made by the parties as to the amount of attorney's fees and upon the jury verdict, rendered a judgment for Oro Negro in the sum of $100,000.00 damages and attorney's fees in the amount of $5,000.00. No motion for new trial was filed by Perry. In this appeal Perry presents eight points of error. By his second point Perry contends that the trial court erred in rendering a judgment for rescission of the option agreement on the basis of the jury's answers to Special Issues 1 and 2, and in permitting Oro Negro to recover the money paid under the August 22, 1977, agreement. Appellant's argument is that the judgment wrongfully allowed rescission of the agreement between the parties for a breach of the agreement, that is, the failure of Perry to make written assignments of the oil and gas leases. Oro Negro counters by saying that restitution of the consideration paid by it to Perry was authorized because of the total failure of Perry to perform the option agreement. In its pleadings in the case, Oro Negro sought recovery on the theory that Perry completely failed to perform the obligation cast on him by the option agreement and therefore Oro Negro was entitled to rescission of the agreement and restitution of the consideration paid by it. The jury's findings in response to Special Issues 1 and 2 merely found facts which were entirely undisputed in the evidence. The only evidence produced at trial by any party indisputably shows that Perry *did not* make written assignment of the oil and gas leases held by him as lessee to Oro Negro. The answer of the jury to Special Issues 3 and 4 clearly establish that Oro Negro had *accepted* all oil and gas leases which had been delivered to it by Perry as to which leases *legal title* had not been transferred by assignment from Perry. Special Issue No. 6 finds facts which clearly demonstrate that on November 8, 1978 (more than a year after the expiration of the extended term of the option agreement), the parties were still acting under the option agreement; plaintiff's Exhibit No. 4 (letter dated November 8, 1978) conclusively establishes that Oro Negro was releasing at that time all oil and gas leasehold estates "... which may have come to me by assignment or by other agreement...." from Perry. The evidence at trial was not developed to show what specific leases were covered by such release. However, plaintiff's Exhibit No. 3 and Defendant's Exhibits Nos. 3, 4 and 5 show that original oil and gas leases covering approximately 1,900 mineral acres of land had been delivered to Oro Negro by Perry. There is no evidence found in the record demonstrating that the leasehold estates, evidenced by such leases delivered to Oro Negro by Perry, described above, had substantial title defects (other than the "Susan Scott" tract). Oro Negro produced no evidence at trial to show that it had rejected any tendered leases because of title defects. The record likewise fails to establish any *express* acceptance of any of the oil and gas leases tendered as contemplated by paragraph (3) of the original letter of agreement, reading in part: "... upon approval of title by Oro Negro, ... the undersigned [Perry] agrees to assign Oro Negro ... all of those oil and gas leases which are the subject of this letter agreement...." The record shows that the parties largely disregarded the procedures contemplated by the option agreement.

Under the record we find that while Oro Negro had a right to demand and receive written assignments of the oil and gas leasehold estates from Perry, the delay in executing and delivering the written as-

signments did not authorize a rescission of the contract between the parties because the same was substantially executed by the parties. *Chenault v. County of Shelby,* 320 S.W.2d 431 (Tex.Civ.App.—Austin 1959, writ ref'd n.r.e.). The appropriate remedy available to Oro Negro under these circumstances was an action for damages resulting from a breach of the option agreement. *Kroschewsky v. Northside Investment Co., Inc.,* 139 S.W.2d 358 (Tex.Civ.App.—El Paso 1940, writ ref'd). Appellant's second point of error is sustained. Appellant admits that his point of error No. eight has no merit under presently controlling authority so the same is overruled. We do not address appellant's remaining points. Since it is apparent to us that the evidence in this case was not fully developed at trial, we reverse the judgment below and remand the cause for a new trial so that the interests of justice may be served.